IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| Cerner Corporation<br><br>                              Plaintiff,<br><br>vs.<br><br>Columbia Casualty Co.;<br>AIG Specialty Insurance Company (formerly known as Chartis Specialty Insurance Company);<br>ACE American Insurance Company;<br>Liberty Mutual Insurance Company; and<br>AXIS Insurance Company<br>                             Defendants. | CIVIL ACTION NO. _____ |

## COMPLAINT

Cerner Corporation ("Cerner" or "Plaintiff"), by and through its attorneys Rouse Hendricks German May PC, and Anderson Kill, P.C., as and for its complaint, respectfully alleges as follows:

### THE PARTIES

Plaintiff

1. Plaintiff, Cerner Corporation, is a corporation incorporated under the laws of the state of Delaware with its principal place of business at 2800 Rockcreek Parkway, North Kansas City, MO 64117.

Primary Layer Defendant

2. Upon information and belief, Defendant Columbia Casualty Company ("Columbia Casualty" or "CNA") is a corporation incorporated under the laws of the state of Illinois with its principal place of business at 333 S. Wabash Ave, Chicago, IL 60604.

Excess Layer Defendants

3. Upon information and belief, Defendant AIG Specialty Insurance Company ("AIG") is a corporation incorporated under the laws of the state of Illinois with its principal place of business at 175 Water Street, New York, NY 10038.

4. Upon information and belief, Defendant ACE American Insurance Company ("ACE") is a corporation incorporated under the laws of the state of Pennsylvania with its principal place of business at 436 Walnut Street, Philadelphia, PA 19106.

5. Upon information and belief, Defendant Liberty Mutual Insurance Company ("Liberty") is a corporation incorporated under the laws of the state of Massachusetts with its principal place of business at 175 Berkeley Street, Boston, MA 02117.

6. Upon information and belief, Defendant AXIS Insurance Company ("AXIS") is a corporation incorporated under the laws of the state of Illinois with its principal place of business at 11680 Great Oaks Way, Alpharetta, GA 30022.

## JURISDICTION AND VENUE

7. Subject matter jurisdiction in this action arises under 28 U.S.C. §1332, in that there is complete diversity, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. This is an action for declaratory judgment (in part) brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and for other relief.

9. This Court has jurisdiction over all Defendants because each defendant is licensed in Missouri or authorized to do business on a surplus line basis in Missouri and has, within the relevant time periods, transacted business in Missouri. In addition, each Defendant has consented to suit in this Court.

10. Venue in this action is proper under 28 U.S.C. § 1391 because the Policies of insurance upon which Cerner predicates its claims were sold to Cerner in this District, and each Defendant has consented to venue in this District.

## **FACTS**

### The Policies

11. Columbia Casualty, an insurance company, sold to Cerner, as policyholder, an enterprise professional solutions liability insurance policy, known as Policy No. 425204233-01, which covered the period from September 1, 2011 to September 1, 2012 (the "Primary Policy" or "CNA Policy"). A true, correct, and complete copy of the CNA Policy is attached hereto as Exhibit A.

12. AIG, an insurance company, sold to Cerner, as policyholder, an excess liability insurance policy, known as Policy No. 08-588-97-22, which covered the period from September 1, 2011 to September 1, 2012 (the "AIG Policy"). The AIG policy sits directly above the limits of the CNA Policy and follows form to the terms of the CNA Policy. A true, correct, and complete copy of the AIG Policy is attached hereto as Exhibit B.

13. ACE, an insurance company, sold to Cerner, as policyholder, an excess liability insurance policy, known as Policy No. XEO G23664628 002, which covered the period from September 1, 2011 to September 1, 2012 (the "ACE Policy"). The ACE

policy sits directly above the limits of the AIG Policy and follows form to the terms of the CNA Policy. A true, correct, and complete copy of the ACE Policy is attached hereto as Exhibit C.

14. Liberty, an insurance company, sold to Cerner, as policyholder, an excess liability insurance policy, known as Policy No. EO4NAABMD6002, which covered the period from September 1, 2011 to September 1, 2012 (the "Liberty Policy").The Liberty policy sits directly above the limits of the ACE Policy and follows form to the terms of the CNA Policy. A true, correct, and complete copy of the Liberty Policy is attached hereto as Exhibit D.

15. AXIS, an insurance company, sold to Cerner, as policyholder, an excess liability insurance policy, known as Policy No. MNN754795/01/2011, which covered the period from September 1, 2011 to September 1, 2012 (the "AXIS Policy").The AXIS policy sits directly above the limits of the Liberty Policy and follows form to the terms of the CNA Policy. A true, correct, and complete copy of the AXIS Policy is attached hereto as Exhibit E.

<u>The Underlying Claim</u>

16. On or about April 19, 2012, counsel for Trinity Health in Minot, North Dakota ("Trinity") made a demand to Cerner seeking damages in connection with the sales, installation and implementation of Cerner's ProFit/Revenue Cycle product.

17. Trinity Health initiated an arbitration against Cerner relating to the April 19, 2012 demand on or about February 28, 2013.

18. The April 19, 2012 demand fits within the definition of a "Claim" under the Policies, as a "written demand for monetary damages or non-monetary relief."

19. Together, the allegations in the April 19, 2012 demand and in the arbitration (the "Trinity Claim") trigger coverage under, at a minimum, the "Technology and Telecommunication Liability" coverage, the "Professional Service Liability" coverage, and the "Media Liability" coverage of the Policies.

20. Following an Interim Award in the arbitration, Trinity and Cerner resolved their claims against one another and settled those claims on December 20, 2013.

21. Before the settlement, Cerner informed each Defendant of the Interim Award and the potential settlement. All of them denied coverage and none expressed any objection to the potential settlement.

22. The Interim Award specifically provided that the "the Hearing shall remain open" in anticipation of a "Final Award."

23. As part of that resolution, Cerner paid to Trinity an amount greater than the combined limits of the Defendants' Policies. In addition, Trinity paid to Cerner a smaller sum also in resolution of the claims in the arbitration.

24. The amount that Cerner paid to Trinity, even when offset by the amount that Trinity paid to Cerner, is also greater than the combined limits of the Defendants' Policies.

25. On or about December 27, 2013, the parties advised the arbitration panel that "the parties reached agreement and exchanged payments in full satisfaction of their respective claims in the arbitration, including claims for attorneys' fees, costs and disbursements. Accordingly, the parties need nothing further from the Panel."

26. On or about January 16, 2014, the firm of Lindquist & Vennum confirmed that "the parties have reached settlement and the Panel's services are no longer needed."

27. Pursuant to an agreement entered into on September 21, 2015, Trinity licensed the Cerner Health Information Management solution, formerly known as ProFile®, which was part of the revenue cycle suite of solutions addressed in the arbitration.

The Coverage Dispute

28. Cerner has requested that each Defendant pay its portion of the settlement payment.

29. Every Defendant has refused Cerner's demand and has denied coverage for the Trinity Claim.

30. CNA paid more than $3.8 million in claim expenses in connection with the Trinity Arbitration.

31. CNA has demanded reimbursement for that amount from Cerner.

32. As grounds for its reimbursement demand, CNA relied upon Exclusion E of the Policy, a "Deliberate Acts" exclusion that applies only "after final adjudication in any proceeding establishes that such act, or such commingling, misappropriation or misuse was committed." The Exclusion further provides that the Insured will reimburse the Carrier for Claim Expenses **only** "If such act, or such commingling, misappropriation or misuse **is so determined** to have been committed" (emphasis added).

33. Because Cerner and Trinity settled the Trinity Claim via settlement, before a Final Award, and before the time for reconsideration or judicial review of the award had expired or even started to run, there was no "final adjudication" and CNA is not entitled to reimbursement.

34. Cerner is entitled to all benefits provided by the Policies.

35. Cerner is entitled to have the Policies interpreted in a reasonable manner that maximizes its insurance coverage.

36. Accordingly, Cerner seeks to have this Court construe the meaning of, and enforce the provisions of, the Policies.

37. Cerner has complied with all applicable conditions under the Policies, and Defendants have not been prejudiced by the nature of any such compliance by Cerner.

38. All parties have agreed to waive any requirements in the subject policies that may have required arbitration and/or mediation in advance of or in place of litigation.

## COUNT I
## DECLARATORY JUDGMENT AGAINST CNA

39. Plaintiff hereby repeats and realleges each of the allegations contained in the preceding paragraphs as if fully set forth herein.

40. As a result of the Trinity Claim, Cerner has incurred Claim Expenses that were properly paid by CNA.

41. CNA has demanded reimbursement of those Claim Expenses.

42. CNA is not entitled to reimbursement of the Claim Expenses under the terms of the CNA Policy, which require a "final adjudication" not present in this matter.

43. By reason of the foregoing, an actual and justiciable controversy exists between Plaintiff and CNA regarding CNA's demand for reimbursement of the Claim Expenses in connection with the Trinity Claim.

## COUNT II
## BREACH OF CONTRACT AGAINST ALL DEFENDANTS

44. Plaintiff hereby repeats and realleges each of the allegations contained in the preceding paragraphs as if fully set forth herein.

45. Each Insurance Policy constitutes a valid contract between a Defendant and Cerner.

46. In breach of their obligations under the Insurance Policies that they sold to Cerner, each Defendant has failed and refused to accept its obligations to provide Plaintiff with the full costs of defense, investigation, and/or indemnification with respect to the Trinity Claim, as required by the Policies.

WHEREFORE, Plaintiff seeks,

(1) under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., a judicial declaration by this Court declaring that CNA is not entitled to reimbursement of Claim Expenses for the Trinity Claim. For the foregoing reasons, such a judicial declaration is necessary and appropriate at this time; and

(2) damages for breach of contract against each Defendant in amounts yet to be ascertained for all costs of investigation,

defense, damages and payments, and all other sums incurred to date by Plaintiff or which may be incurred, together with the costs and disbursements of this action, including, but not limited to, reasonable attorneys' fees, costs and pre-judgment and post-judgment interest.

**DEMAND FOR JURY TRIAL**

Plaintiff Cerner hereby demands a jury trial for all claims which are so eligible.

Dated: December 23, 2015

By: /s/ William D. Beil
William D. Beil   MO Bar #33922
ROUSE HENDRICKS GERMAN MAY PC
1201 Walnut Street
20th Floor
Kansas City, MO 64106
billb@rhgm.com
Telephone: 816-471-7700

Mark Garbowski
ANDERSON KILL, P.C.
1251 Avenue of the Americas
New York, NY 10020
mgarbowski@andersonkill.com
Telephone: 212-278-1000

*Attorneys for: Plaintiff*
Cerner Corporation